## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

―――――――――――――――――――――――――  )
Frances Augello                                          )
7521 Cross Gate Lane                                )
Alexandria, VA 22315                              )
                                                                 )
     Plaintiff,                                        )
                                                                 )
     v.                                                    )     **Civil Action No. _____**
                                                                 )
Jacob Lew                                                )
Secretary of the Treasury                         )
1500 Pennsylvania Ave. NW                   )
Washington, DC 20220                           )     **ECF Case**
                                                                 )
     Defendant.                                     )
―――――――――――――――――――――――――  )

## COMPLAINT

### Preliminary Statement

1.     Plaintiff Frances Augello, an attorney employed by the U.S. Department of Treasury ("Treasury"), files this action against Defendant Jacob Lew in his capacity as the Secretary of the Treasury, seeking redress under the Age Discrimination in Employment Act, 29 U.S.C. § 633a.

2.     Defendant denied Plaintiff two promotions: one in March 2015, and the other in August 2015.  She was qualified for both promotions based on over 32 years of service to the federal government, outstanding ratings, and thorough knowledge of banking regulation.  Instead of choosing Plaintiff, Defendant promoted employees who were decades younger and decades less experienced.

### Jurisdiction and Venue

3.     This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331.

4.      Venue lies in this court, pursuant to 28 U.S.C. § 1391(e).  All of the events giving rise to these claims occurred in the District of Columbia, at Defendant's offices.

## Parties

5.      Plaintiff Frances Augello is a citizen of the Commonwealth of Virginia who is domiciled in Virginia and works at the Treasury in Washington, D.C.  She was born in 1957. She has been an attorney for the federal government since 1984.

6.      Defendant Jacob Lew, the Secretary of the Treasury of the United States, is named in his official capacity.

## Factual Allegations

## Plaintiff's Background and Qualifications

7.      Ms. Augello graduated from Villanova University School of Law in 1982.  She has 34 years of experience as an attorney, serving 32 years in federal securities and banking practice.

8.      Since 1984, Ms. Augello has held various senior attorney positions with the Securities and Exchange Commission (1984-1987), and the Federal Home Loan Bank Board and its successor, the Office of Thrift Supervision ("OTS"), under the Department of the Treasury (1987-2011).

9.      Ms. Augello held a managerial position, as Acting Regional Counsel, in the OTS's Southeast Regional Office (July-Oct 2010).  In that position, she supervised two attorneys and one administrative assistant.

10.      On approximately July 21, 2011, OTS was abolished.  Many of its employees, included Ms. Augello, were transferred to the Office of the Comptroller of the Currency ("OCC").

11.     When Ms. Augello was transferred to the OCC, she was placed into the position of Counsel to the Chief Counsel's Office ("CCO") within the Bank Activities & Structure Division ("BAS").  At all relevant times, Eric Thompson has been the Director of BAS.  BAS Director Thompson reports to Deputy Chief Counsel Karen Solomon, who in turn reports to Chief Counsel Amy Friend.

12.     Ms. Augello's duties in OTS and her duties in BAS were substantially similar in that both jobs required experience in complex aspects of corporate law, banking law, and federal securities law, as well as experience in counseling agency management and agency client divisions on the legality, safety, and soundness of banking operations.

13.     OCC has the following positions for lawyers:  Attorney, Senior Attorney, Counsel, Special Counsel, Senior Counsel, and Assistant Director.  At the time Ms. Augello was transferred to OTS, an attorney needed 9 years of service to be promoted to Counsel, 1 year of service as Counsel to be promoted to Special Counsel, and 1 year of service as Special Counsel to be promoted to Senior Counsel.  Somewhat inconsistent with this structure, the position of Assistant Director had supervisory duties but did not have experience requirements.  All of these positions required specialized legal knowledge.

14.     Ms. Augello received a performance rating of "4," the highest performance rating available, on her performance evaluations each fiscal year since arriving at OCC (2011-2015).  Between August 2011 and July 2015, she earned 13 awards for her high quality of work.  Ms. Augello continued to earn awards for her performance during the 2016 fiscal year.

15.     At the time of Ms. Augello's transfer, in July 2011, her direct supervisor was Assistant Director Jonathan Fink, who reported to BAS Director Thompson.  Assistant Director

Kevin Corcoran and now-former Assistant Director Steven Key also reported to BAS Director Thompson.

16.     On January 21, 2014, after approximately 2.5 years as an attorney in BAS, Ms. Augello began a detail as Special Assistant to the two Deputy Chief Counsels.  The detail, which was supposed to last eighteen months, was extended until September 9, 2016.

### The OCC Law Department used succession planning to advance the careers of younger attorneys, at the expense of older attorneys.

17.     At all times relevant to this Complaint, one of Defendant's priorities was succession planning.

18.     At OCC, as in much of the rest of the federal government, retirement eligibility is closely tied to age.

19.     At OCC, "succession planning" was based on an assumption that employees who were eligible for retirement soon would retire.  OCC succession planning required managers to plan to replace retiring employees by identifying members of a new generation for advancement opportunities before the older generation retired, or even announced any intention of doing so.

20.     At least as early as February 2014, OCC began holding succession planning briefings and requiring managers to implement succession plans – also known as succession planning initiatives and management succession.

21.     Ms. Augello attended a Law Department management meeting on February 4, 2014, shortly after she became Special Assistant to the Deputy Chief Counsels.  At the meeting, Law Department managers discussed specifically identifying individuals for succession planning and leadership tracking.

4

22.     At the February 4, 2014 meeting, it was announced that at the next meeting, all Law Department managers would have to provide succession plans identifying individuals on leadership and management tracks.  Beginning with the next meeting, held on February 25, 2014, OCC treated succession planning meetings as highly sensitive, restricted attendance to high-ranking Law Department managers, and excluded Ms. Augello and Jonathan Fink, by then a Senior Advisor to the Chief Counsel.  The succession planning meetings were a rare occasion when Senior Advisors and Special Assistants were excluded from meetings of management.

23.     In his 2014 and 2015 Accomplishment Reports, BAS Director Eric Thompson stated that he was focused on the long-term implications of having a senior BAS Staff and he noted that almost all of the attorneys who had transferred from OTS were retirement-eligible. Ms. Augello was one of those attorneys and retirement eligible at that time.  BAS Director Thompson noted that he had created advancement opportunities for several attorneys, all of whom were younger, by placing them as acting Assistant Directors.

24.     At a BAS staff meeting, BAS Director Thompson stated that he valued "experience over age."

### OCC Law Department supervisors changed and circumvented established processes so that they could promote younger attorneys.

25.     Five months after the Succession Planning meetings began, on July 22, 2014, OCC reduced the eligibility requirement for the Counsel position from 9 years of legal experience to 6 years.  The change had the purpose and effect of making an increased number of younger attorneys eligible to be Counsel.  Because service as Counsel is a prerequisite for the Special Counsel and Senior Counsel positions, the change also meant that an increased number of younger employees would be eligible for these promotions as well.

26.     The first step in the selection process for new Counsel was solicitation by the Chief Counsel of nominations from Law Department managers.  On September 25, 2014, CCO solicited nominations for Counsel.  BAS Director Thompson nominated Ms. Eden Gray, born in 1980, and Ms. Valerie Song, born in 1978, for the position of Counsel on October 15, 2014. Neither Ms. Gray nor Ms. Song would have met the previous 9 years of legal experience eligibility requirement.

27.     Ms. Augello's duties as Special Assistant to the Deputy Chief Counsels included some human resources duties related to the promotion process.  On or about December 9, 2014, Ms. Augello notified BAS Director Thompson that Ms. Song did not meet a still-existing eligibility requirement for the Counsel position because she had not been at OCC long enough to receive two performance reviews.  Thompson spoke to Karen Solomon, Deputy Chief Counsel, and showed that he was incensed that he was not able to promote Ms. Song, but Ms. Song did not receive the position of Counsel.

28.     Ms. Gray received the Counsel position in or around December 2014.

29.     On May 18, 2015, BAS Director Thompson again nominated Ms. Song for the position of Counsel.  She was reassigned to the Counsel position, effective July 12, 2015.

**OCC denied Ms. Augello a promotion to Special Counsel
to promote a younger, less-qualified attorney.**

30.     OCC Special Counsel positions require specialized experience and a minimum of one year at the Counsel level.

31.     On June 10, 2014, Chief Counsel Friend announced a new process for the filling of Special Counsel Attorney positions.  Under the new procedure, Law Department managers

would prepare the position announcements, ostensibly to fit the needs of their units. The position announcements would be posted on USA Jobs.

32. On September 11, 2014, CCO made its formal call to Law Department managers for Special Counsel position announcements.

33. The Law Department managers involved in the preparation of the position announcements, including BAS Director Thompson, tailored the announcements to align with the duties and responsibilities of certain pre-selected, younger, less-experienced attorneys.

34. On December 12, 2014, Chief Counsel Friend announced that the position announcements had been posted on USA Jobs. That same month, Ms. Augello submitted her application for BAS Special Counsel through USA Jobs. Ms. Augello's application included a detailed explanation of how she met each of the qualifications for the Special Counsel position.

35. On January 26, 2015, Ms. Augello received notification that her application for Special Counsel had been referred to the selecting official, BAS Director Thompson. Ms. Augello was interviewed for the position.

36. On March 30, 2015, BAS Director Thompson notified Ms. Augello that she was not selected for the BAS Special Counsel position. Ms. Gray, approximately 34 years old at the time of selection, was selected to fill one of the two available BAS Special Counsel positions. Other than Ms. Gray, there were no other candidates under the age of 50 who met the minimum qualifications for the promotion.

37. In addition to Ms. Augello, two very experienced BAS attorneys over the age of 60 were not selected for the BAS Special Counsel positions.

38.     Ms. Gray did not meet the requirements to be Special Counsel because she had been in the position of Counsel for approximately 4 months at the time of her selection to Special Counsel, which fell short of the 1-year requirement.

39.     Defendant allowed the promotion of Ms. Gray to stand, although she did not meet this requirement, because the deficiency was not identified until after the promotion was announced.

40.     On September 25, 2015, Ms. Augello filed a timely Notice of Intent to Sue pursuant to 29 C.F.R. § 1614.201 with the EEOC for denial of the Special Counsel promotion.

**OCC denied Ms. Augello a promotion to Assistant Director
and instead promoted two younger, less-qualified attorneys.**

41.     On June 15, 2015, two vacancies for BAS Assistant Director positions were posted to USA Jobs.  Filling the Assistant Director positions, which were supervisory positions, did not require a minimum level of service at the Counsel level.  Ms. Augello applied for these positions.  The posting for the Assistant Director position explained that applicants would be evaluated in three areas: (1) knowledge and experience in the legal work of the Bank Activities & Structure Division with respect to national banks and federal savings associations and federal branches and agencies of foreign banks; (2) experience in leading or managing projects to ensure that client needs and priorities are understood and met; and (3) ability to work effectively with senior officials, or similar officials at other financial regulatory agencies, in order to make important contributions.  Ms. Augello's application included a detailed explanation of how she met each of the qualifications for the Assistant Director position.

42.     Ms. Augello's interview was scheduled for July 29, 2015.  Former BAS Assistant Directors Key and Fink and current Assistant Director Corcoran conducted the interview.  BAS

Director Thompson was the Selecting Official for the Assistant Director positions.  Ms. Augello was 57 years old at the time of her interview.

43.     BAS Director Thompson orally informed Ms. Augello that she did not receive the position on August 17, 2015.  That same day, he announced the selection of Ms. Gray (approximately 35 years old) and Ms. Song (approximately 37 years old) as the new BAS Assistant Directors.  At this time, Ms. Gray had been in the position of Counsel for approximately 5 months, and Ms. Song for a little over one month.  Ms. Augello had been Counsel for 4 years, since her transfer from OTS, and in equivalent positions at OTS for decades.

44.     Members of the Interview Panel who participated in the selection process attributed their recommendations not to promote Ms. Augello to her service as Special Assistant to the Deputy Chief Counsels, claiming the position did not require the same knowledge and skills as the Assistant Director position.

45.     Blaming the denial of promotion on Ms. Augello's service as a Special Assistant was obviously pretextual – several of the panel members had served as Special Assistants to the Chief Counsel or Deputy Chief Counsel before their own promotions to Assistant Director.

46.     The Executive Assistant to the Chief Counsel had also assured Ms. Augello that serving as Special Counsel would not negatively impact her promotion potential.

47.     In her role as Special Assistant, Ms. Augello did substantive work that required strong analytical and interpersonal skills.  She took on substantial responsibility for planning and organizing several important Office of Chief Counsel events.  Her duties as Special Assistant required collaborative, substantive work.

48.     The Interview Panel claimed that Ms. Augello lacked strong interpersonal skills. This, too, was pretextual – Ms. Augello has always received the highest rating for her

interpersonal skills in her evaluations.  Ms. Augello's job as Special Assistant was akin to a

Chief of Staff position and required her to work effectively with other units both inside and

outside the Law Department.

49.     Members of the Interview Panel also claimed that Ms. Augello's work experience

in BAS did not demonstrate high level of knowledge and experience involved with more

complex assignments.  This is not supported by Ms. Augello's evaluations, as she has always

received the highest ratings.  Assistant Director Corcoran, one of the panelists, gave Ms. Augello

her OCC rating in 2011, and gave her the highest ranking.  Further, Ms. Augello did substantive

work during her time in BAS, OTS, and the SEC.  Ms. Augello is proficient in all the subject

areas that were listed in the Assistant Director job description,[1] and has much more experience in

those areas than both Ms. Gray and Ms. Song.  At BAS, Ms. Augello was involved in

assignments such as CMG Cooperation Agreements, problem bank assignments, 914 Notice and

Golden Parachute reviews, and Treasury TARP/CCP Securities Auctions, all of which are

complex assignments that require a high level of knowledge.

---

[1] The Vacancy Announcement listed the subject areas as: (1) corporate structure matters such as chartering national banks and federal thrifts, branching, main office relocations and designations, operating subsidiaries and investments in other entities, mergers and acquisitions, interstate cross-border operations, management interlocks, and changes in bank control; (2) issues relating to general bank powers and activities such as special purpose banks, lending limits, leasing activities, loans to insiders, affiliate transactions, bank premises, other real estate owned; (3) issues relating to prudential operations of national banks, federal thrifts, third-party service providers, and other emerging operational risk issues including cybersecurity risks; and (4) problem bank issues including resolution and recovery issues presented by systemically important large banks and banks with cross-border operations.

50.     The Interview Panel's claim that Ms. Gray and Ms. Song were better qualified than Ms. Augello, and demonstrated superior technical, analytical, and leadership skills than Ms. Augello, is not supported by either Ms. Gray's or Ms. Song's resumes or applications.

51.     The Assistant Director position requires a broad scope of knowledge and experience, but Ms. Gray's entire legal career has been spent at the OCC, and in BAS only.  Ms. Song's entire legal career, except for two years she spent at a law firm, has been spent at the OCC, and in BAS only.

52.     Though the Assistant Director position is supervisory, Ms. Gray's and Ms. Song's only managerial experience was the "Acting Assistant Director" position that BAS Director Thompson assigned each of them during 2014-2015.  There was no application required for the Acting Assistant Director position – BAS Director Thompson hand-selected Ms. Gray and Ms. Song.  Both Ms. Gray and Ms. Song held the Acting Assistant Director position for only three months, and did not have any real managerial responsibilities during that time.

53.     In total, Ms. Gray's application materials indicated that, when she was selected for the BAS Assistant Director position, her work experience consisted of nearly 8 years.  Ms. Song had nearly 9 years' experience.

54.     In sharp contrast to Ms. Gray and Ms. Song, Ms. Augello had approximately 33 years of experience when BAS Director Thompson informed her that she was not selected for an Assistant Director position.

55.     By virtue of her long career in federal securities and banking law and accomplishments in that career, Ms. Augello had significantly more in-depth knowledge and experience in the legal work of BAS with respect to national banks and federal savings

associations and federal branches and agencies of foreign banks, the first rating area for the Assistant Director position.

56.     Similarly, by virtue of her career and accomplishments, Ms. Augello demonstrated significantly more ability and experience than Ms. Gray and Ms. Song did in leading or managing projects to ensure that client needs and priorities are understood and met, the second rating area for the position.

57.     Ms. Augello also had significantly more in-depth experience than did Ms. Gray or Ms. Song concerning the ability to work effectively with senior officials, or similar officials at other financial regulatory agencies, to make important contributions, the third rating area for the position.

58.     During her 33 years working in federal securities and banking law, Ms. Augello had demonstrated in-depth knowledge and experience in BAS's legal work, had led and managed projects, and had worked effectively with senior officials to make important contributions.  She has provided guidance and expertise to supervisory units and become proficient in corporate structure matters, issues related to general bank powers and activities, problem banks, prudential operations of institutions, third-party providers, and other emerging operational risks.  She provided legal advice and guidance to interagency and intra-agency working groups, as well as the District Counsel, and has worked with other legal units in the Law Department.  Since coming to OCC in 2011, Ms. Augello has led and participated in a number of OCC working groups and interagency working groups and task forces, such as mid-level attorney development; Treasury, TARP, and CCP Securities Auctions; Interagency Biographical and Financial, BMA, Charter forms; information sharing agreements, and international cooperative agreements.

59.     As Special Assistant, Ms. Augello exercised substantial responsibility planning and organizing important CCO events – such as the Midsize Bank General Counsel Roundtable, the CCO Open House, and the Biennial Meeting – to ensure that client needs and priorities are understood and met.  She organized, coordinated, and managed various attorney training and development programs, and supervised an assigned staff and directed the resources necessary to carry out the office's work.  She had extensive experience planning, organizing, implementing, and directing activities associated with legal practice in banking and thrift law, enforcement, corporate transactions, and ethics.

60.     In her Special Assistant role, Ms. Augello also developed and maintained good working relationships within and outside Treasury and improved communications, which was a CCO priority.  She has coordinated numerous CCO and agency-wide initiatives that require both leadership and interpersonal skills, and has developed and maintained good relationships with CCO senior management and OCC senior management.  She provided assistance and coordination for the Midsize Bank General Counsel Roundtable three years in a row.  She has also provided assistance and advice to the District Counsel on licensing matters.

61.     After selecting Ms. Gray and Ms. Song, BAS Director Thompson did not entrust them with a full share of the duties and responsibilities of the Assistant Director position.  On August 19, 2015, BAS Director Thompson assigned nearly half of BAS's problem bank portfolio (21 out of 46 banks) to Assistant Director Corcoran.  The problem bank portfolio is the majority of BAS's workload.  Ms. Gray was assigned 9 out of 46 problem banks, and Ms. Song was assigned 11 out of 46.

62.     The promotions of Ms. Gray to Special Counsel and Assistant Director and Ms. Song to Assistant Director are recent examples of a pattern of personnel decisions by CCO and BAS of promoting younger attorneys to various positions to the disadvantage of senior attorneys.

63.     Ms. Augello filed a formal complaint of discrimination, Case No. OCC-15-1567-F, with the Treasury's Office of Civil Rights and Diversity on December 2, 2015.  Defendant issued a Final Decision on Ms. Augello's claim on June 29, 2016.

**COUNT ONE**
**DENIAL OF PROMOTION TO SPECIAL COUNSEL**
**BECAUSE OF AGE DISCRIMINATION**
**IN VIOLATION OF 29 U.S.C. § 633a**

64.     Plaintiff incorporates, as though restated herein, each of the allegations stated in paragraphs 1 through 63 above.

65.     The ADEA provides that all federal personnel decisions must be free from discrimination on the basis of age.

66.     Defendant is an employer covered by the ADEA.

67.     Treasury discriminated against Plaintiff based on her age by denying her a promotion because of her age for which she was the most qualified applicant, and selecting a younger, less-qualified applicant instead.

68.     As a result of Treasury's actions, Plaintiff has incurred, and will incur, loss of salary and will likely receive a lesser pension than she would have earned had she been promoted in 2015.

WHEREFORE, Plaintiff Frances Augello respectfully requests that this Honorable Court grant her the following relief on Count I of her Complaint:

A.     Award judgment on her behalf against the Defendant;

B.      Award her back pay and lost benefits;

D.      Award her promotion to Special Counsel;

E.      Award her costs of litigation, including attorney's fees and expert witness fees

pursuant to 28 U.S.C. § 2412(b) of the Equal Access to Justice Act;

F.      Declare that Defendant's conduct was in violation of the ADEA; and

G.      Award her all other relief this Court deems just.

## COUNT TWO
## DENIAL OF PROMOTION TO ASSISTANT DIRECTOR
## BECAUSE OF AGE DISCRIMINATION
## IN VIOLATION OF 29 U.S.C. § 633a

69.      Plaintiff incorporates, as though restated herein, each of the allegations stated in

paragraphs 1 through 68 above.

70.      Defendant issued a Final Agency Decision on Plaintiff's claim for denial of

promotion to Assistant Director on June 29, 2016.

71.      Treasury discriminated against Plaintiff based on her age by denying her a

promotion because of her age for which she was the most qualified applicant, and selecting

younger, less-qualified applicants instead.

72.      As a result of Treasury's actions, Plaintiff has incurred, and will incur, loss of

salary and will likely receive a lesser pension than she would have earned had she been promoted

in 2015.

   WHEREFORE, Plaintiff Frances Augello respectfully requests that this Honorable Court

grant her the following relief on Count II of her Complaint:

A.      Award judgment on her behalf against the Defendant;

B.      Award her back pay and lost benefits;

D.      Award her promotion to Assistant Director;

E.      Award her costs of litigation, including attorney's fees and expert witness fees

pursuant to 28 U.S.C. § 2412(b) of the Equal Access to Justice Act;

F.      Declare that Defendant's conduct was in violation of the ADEA; and

G.      Award her all other relief this Court deems just.


Respectfully submitted,

/s/

_____
David Wachtel, D.C. Bar # 427890
Trister, Ross, Schadler & Gold, PLLC
1666 Connecticut Avenue, N.W.
Suite 500
Washington, DC 20009
(202) 328-1666 ext. 1334
dwachtel@tristerross.com
*Attorney for Plaintiff Frances Augello*


DATED:  September 27, 16